UNITED STATES DISTRICT COURT
NONTHERN DISTRICT OF OHIO
------------------------------------------------------
:
ENTITY PRODUCTION, and : CASE NO. 1:07-cv-1197
EDWARD DOUGLAS :
:
        Plaintiffs, :
:
vs. : ORDER & OPINION
: [Resolving Doc. 15]
JOSEPH VARGO, and :
CHRISTINE FILIPAK. :
:
        Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On April 23, 2007, Plaintiffs filed a complaint alleging various claims including copyright and trademark infringement, cybersquatting, and unfair competition under both federal and Ohio law. [Doc 1]. On June 21, 2007, Defendants filed an answer and counter-claims alleging violations of federal and state trademark law, as well as various other claims. [Doc. 10]. On July 16, 2007, Plaintiffs Entity Production and Douglass moved for this Court to dismiss the second claim in the counter-claim. [Doc. 15]. Plaintiffs claim that Defendants have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Defendants did not respond to the motion. For the following reasons, the Court **GRANTS** the motion.

**I. Background**

Plaintiff Entity Production, Inc. ("Entity"), through its music publishing division, LinFaldia Records, owns copyrights to music recorded by the group "Midnight Syndicate" which records high-

-1-

Case No. 1:07-cv-1197
Gwin, J

end gothic and Halloween-themed music. [Doc. 1] Plaintiff Douglas founded "Midnight Syndicate" and Entity owns the "Midnight Syndicate" trademark. [*Id.*].

Plaintiff Douglas met Defendants in 1997. [Doc. 1]. Defendants own "Monolith Graphics." Plaintiff Douglas entered into an agreement with Defendant Vargo that they would produce an album together. Thereafter, Plaintiff Douglas alleges that Defendant Vargo provided spoken words, some song titles, and designed the packaging and point of sale materials for two "Midnight Syndicate" recordings, Born of the Night and the Realm of the Shadows. [*Id.*] Defendant Vargo contends that he also provided musical direction, co-arranged the music, and made all final decisions regarding Born of the Night, but he makes no claims as to co-arranging Realm of the Shadows. [Doc. 10].

The parties entered into agreements with defined termination dates concerning each of the recordings. [Doc. 1]. By mutual agreement, however, the parties had continued production of the recording beyond the agreed termination date. Following the second recording, the Plaintiffs and Defendants could not agree on terms regarding a third recording and so did not engage in further agreements. Defendant Vargo formed his own group called "Nox Arcana." [*Id.*]

Defendant Vargo produced several albums with Nox Arcana, including "Darklore Manor" and "Necronomicon." [Doc. 10]. Both albums are registered with the US Copyright Office. Defendant Vargo alleges that Plaintiffs produced an album, The 13th Hour, that was deceptively similar to Darklore Manor and Necronomicon. Defendants also allege that Plaintiff Douglas plagiarized portions of Defendant's "a history of Darklore manor." In the counter-claim at issue, Defendants counter-claimants allege that this violated both Ohio Law and the Lanham Act. [*Id.*] Plaintiffs counter-claim defendants argue that the state law claims are preempted by federal law, and

-2-

Case No. 1:07-cv-1197
Gwin, J

move for their dismissal. [Doc. 15].

## II. Legal Standard

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Court grants a Rule 12(b)(6) motion when "it is clear that the plaintiff can prove no set of facts in support of [the] claim that would entitle [the plaintiff] to relief." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). In deciding a motion under Rule 12(b)(6), the Court accepts all of the allegations as true and construes the complaint "liberally in favor of the party opposing the motion." *Id.* While the Court accepts all well-pleaded allegations as true, the Court does not accept the "bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Nor does the Court accept "unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## III. Analysis

*A. Preemption of State Law Claims*

Section 301 of the Copyright Act provides that:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as defined by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (1994). Therefore, "a state common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

Case No. 1:07-cv-1197
Gwin, J

446, 453 (6th Cir. 2001).

1. Subject Matter Requirement

 Section 102 of the Copyright Act provides:

 § 102. Subject matter of copyright: In general
 (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
   (1) literary works;
   (2) musical works, including any accompanying words;
   (3) dramatic works, including any accompanying music;
   (4) pantomimes and choreographic works;
   (5) pictorial, graphic, and sculptural works;
   (6) motion pictures and other audiovisual works;
   (7) sound recordings; and
   (8) architectural works.
 (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. §§ 102.

Defendants here allege that Plaintiffs used press releases and album descriptions, copying the themes and concepts. Defendants also allege that Plaintiffs plagiarized portions of Defendant Monolith Graphics' article. To the extent that Defendant counter-claimants claims are protected by the Copyright Act, they are within the subject matter of the Copyright Act. The albums, their cover-art, and literary works are within the scope of Section 102 (5), (8), and (1). 17 U.S.C. §§ 102.

Further, Defendant counter-claimants' ideas are also within the scope of the Copyright Act for the purposes of a preemption analysis. In *Wrench*, the Sixth Circuit held that "the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections." *Wrench*, 256 F.3d at 455. In that action, appellants argued that since their intangible ideas were not protected by the

-4-

Case No. 1:07-cv-1197
Gwin, J

Copyright Act, actions based on them are not within the act's scope. *Id.* The Court rejected that argument, noting that such a position "would require us to separate out appellants' intangible ideas from these tangible expressions, and would afford appellants a state law claim in the face of clear congressional intent to preempt such action." *Id.*

The Court finds the subject of counter-claim two are therefore within the scope of the Copyright Act. *See id.*

<u>2. Equivalency Requirement</u>

The Court need also determine whether the state common law or statutory action at issue asserts rights that are the same as those protected under § 106 of the Copyright Act. *Id.* Section 106 provides:

> § 106. Exclusive rights in copyrighted works
> Subject to sections 107 through 121, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> > (1) to reproduce the copyrighted work in copies or phonorecords;
> > (2) to prepare derivative works based upon the copyrighted work;
> > (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> > (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> > (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> > (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. §106. Equivalency exists if the state law right may be abridged by an act which in and of itself would infringe one of the exclusive rights. If an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, there is no preemption, as

Case No. 1:07-cv-1197
Gwin, J

long as the extra element changes the nature of the action so that becomes qualitatively different from a copyright infringement claim. *See Wrench*, 256 U.S. at 456.

In this case, Defendant counter-claimants assert the following state-law claims: dilution of common law trademark rights, unfair competition under Ohio common law, and unfair and deceptive trade practices under Ohio Revised Code § 4165. All of these claims are based upon an argument that Plaintiffs misappropriated Defendants' ideas and works. As such, they are preempted. *See, e.g., ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts,* 402 F.3d 700, 714 (6th Cir. 2005) (finding preemption on an unfair competition claim where the only basis of the claim was misappropriation of the copyrighted part numbers, images, etc.); *Stromback v. New Line Cinema,* 384 F.3d 283, 303 (6th Cir. 2004) (claim "based upon the time, effort, and money that he expended in developing the screenplay [does not assert] an extra element that saves his claim from preemption").

*B. The Lanham Act*

Defendant counter-claimant further alleges allegations of the Lanham Act when Plaintiff Douglas used portions of Defendants' article, "History of Darklore Manor" as the basis of his "Haverghast Family" story. Defendant counter-claimant contends that this caused a likelihood of confusion as to the source of the album.

The Supreme Court interpreted 15 U.S.C. §1125(a) in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In that case, Dastar released a video series that based itself on an earlier series that was in the public domain. *Id.* at 27-28. Dastar failed to credit the plaintiffs for the creative content of the video, and plaintiffs sued for "reverse passing off." *Id.* The Supreme Court noted that Dastar accurately identified itself as the manufacturer of the physical video, and therefore

-6-

Case No. 1:07-cv-1197
Gwin, J

no false designation of origin had occurred. *Id.* at 38. The Court "caution[ed] against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 33. The Court concluded that "reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.

Several courts have extended *Dastar*'s reasoning to preclude Lanham Act claims that allege false designation of origin for protected copyrights. *See, e.g.*, *Zyla v. Wadsworth*, 360 F.3d 243 (1st Cir. 2004); *General Universal Sys. v. Lee*, 379 F.3d 131 (5th Cir. 2004); *National Business Development Services, Inc. v. American Credit Education & Consulting, Inc.*, No. 07-11140, 2007 WL 1500292 (E.D. Mich. May 23, 2007). The Court finds the reasoning in these cases persuasive. Defendant counter-claimant has not alleged that Plaintiff Douglas took his materials, repackaged them, and sold them under his name. Rather, Defendant counter-claimant Vargo claims that Plaintiff Douglas used his themes and concepts, story elements, cover art, interior art, website artwork, and storylines. [Doc. 10]. Since the Supreme Court found 'origin of goods' did not refer to the ideas, concepts, or communications incorporated into the goods, this claim is not cognizable under the Lanham Act.[1] *See Dastar,* 539 U.S. at 37; *see also Lee*, 379 F.3d at 149.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss the second counter-claim.

---

[1] Defendant counter-claimant has also charged Plaintiffs with copyright infringement.

Case No. 1:07-cv-1197
Gwin, J

  IT IS SO ORDERED.


Dated: October 23, 2007           s/  *James S. Gwin*
                     JAMES S. GWIN
                     UNITED STATES DISTRICT JUDGE